The appellant, Demetrius Connelly. I'd like to reserve four minutes for rebuttal, if I may. Yes. Your Honors, as both of the opinions filed in the State Court have acknowledged, there was clearly very weak information about the vital issue of cartels. In fact, I submit that there is a significant likelihood that the appellant in this case was convicted of homicide, even though one or more of the jurors was not convinced that his actions brought about the death of the victim. That is an intolerable state of affairs. There were several errors that can be attributed to this. One was that the trial court omitted the element of causation from what was supposed to be a complete list of the elements of involuntary homicide. More directly, the trial court refused to answer when the jury asked, must we convict this defendant of involuntary manslaughter if we think he committed a battery? We do not believe his actions resulted in the victim's death. What is the constitutional rulebook underlying this? I mean, here we have – there was an instruction that said to constitute manslaughter, there must be in addition to the death of a human being an unlawful act, which was a cause of that death. And the – but it does appear that the jury was confused, and there were other things that they were confusing. So what is the – what constitutional rubric is it that says that the district court had some obligation to say more than she did before because the jury was confused? I'm just curious. I'm not – I'm sorry, I don't know why that is. Are you asking about her failure to answer the jury question? Yes. If one assumes that the jury instructions by themselves were somewhat confusing but not such that you would strike them down themselves, what does the failure to answer completely the jury question – how does that fit in? How does that feed into a constitutional violation? I believe that Bowen Beck said, and this Court in Beardsley and McDowell echoed, that when the jurors express their confusion about an essential element, it is the trial court's duty to clear up that confusion with unmistakable clarity, if I recall the language. You can't just leave a jury that has expressed confusion about the essential elements of the case wondering about the essential elements of the case. The trial judge – the Sixth Amendment requires more than a potted plant on the bench. I think I know that Your Honor would appreciate that fully. Is Bowen Beck a constitutional decision? You know, Bowen Beck – that's an interesting question. Bowen Beck was a federal case and hence didn't arise explicitly under constitutional review of a state judgment. But the subsequent cases, and specifically McDowell and Beardsley, have interpreted Bowen Beck as setting forth a Sixth Amendment requirement. See, one of the problems the trial court has in maybe determining from a jury's question if they're confused is if you begin to question the jurors to clarify what is confusion and what it is, you may be getting involved in a disclosure of their discussions, deliberations. So being a trial judge, I'm very careful and reluctant to do nothing but try to respond to the question. Absolutely, Your Honor. But this jury asked – well, it asked two things. Can we find him guilty of battery? But it also said, what do we do if, quote, I don't believe the defendant's actions resulted in the killing? I mean, it would probably be good to ask the juror more, but I submit that when a juror says, what do I do if the defendant's actions did not result in the killing, the answer must be yes. If you don't believe his actions caused the victim's death, you cannot find him guilty. In fact, if you're not convinced of that, beyond a reasonable doubt. I actually wanted to turn to what I think is the most basic error in the case, which was the trial counsel's failure to investigate the easily available evidence that would have put the issue of causation entirely to rest. The only evidence that the jury heard regarding causation came from the prosecution's pathologist, who testified, quote, beyond any medical certainty that the victim's death was caused in whole or in part by a – by compression to his neck, which resulted in the fracturing of a tiny bone in his thyroid corn. Number two, that the fracture was almost surely caused by the pressure of a crutch that, it's undisputed, was yielded by the appellant, rather than by the flurry of savage kicks from the co-defendant. And number three, that the victim definitely did not die of a spontaneous heart attack as the defense was attempting to get him to acknowledge. Now, appellant's trial counsel believed that causation was the central issue in the case. He knew months in advance what the pathologist would say. Counsel was, in effect, one telephone call away from obtaining the most powerful possible evidence to the contrary, testimony of an expert forensic pathologist and toxicologist. The defense counsel knew that the prosecution would be calling this pathologist before the trial started? Absolutely. Nine months earlier, there was a preliminary examination, a dress rehearsal, and they went through basically all the same testimony. And what, the record shows that, what, did he consult some expert? He never made a telephone call. He never talked to – he didn't even call and say, I'm not going to hire you, but I want to know how to best prosecute this pathologist. He never made any effort to investigate what he could do to counter the pathologist. What's your best case then? So the failure to make that phone call even is deficient in the trickling term. Alcala versus Woodford is, I think, an excellent case on that point. Well, it's trickling. I mean, isn't trickling itself a bad case? It's trickling. And a more recent Supreme Court case. Well, Williams wasn't that another one? I think the cases are legion about the failure to investigate. Isn't the real issue here more the second part of trickling, and shouldn't we be concentrating on that? I mean, as I understand the argument, it's that the cross-examination was, in fact, sufficiently – sufficient to do much of the same thing, and therefore, there was not prejudice. And that's absolutely not true. The more that he cross-examined the pathologist, the more firm and vociferous the pathologist got. The only evidence before the jury was that the death was caused by a fracture that almost certainly was visited by the defendant. By that crutch. By that crutch. And what the other evidence would have – and even with that being the only evidence, the jury spent days returning a verdict, and they were clearly confused about – at least some juries still didn't didn't believe for sure that there was causation. Now, when you say they were confused, you addressed earlier this. I think it's business about the jury. No. But you're complaining also. I mean, just basically about the instruction. And that's the instruction on what? On the second voluntary manslaughter. Involuntary. Because what? It was incomplete. Right. The instruction says basically, here are the elements you have to find. Here are the essential elements of involuntary manslaughter. And it lists two elements, and neither of them is that the perpetrator caused in any sense the death. If you look at the instruction right next to it, the voluntary manslaughter instruction, it lists the same two elements. Why is there a – It adds specifically that an essential element is the perpetrator must – But that's – I think that's part of the State's argument, right, that the other instructions cured any deficiency. Right. And what I'm saying is that exactly the opposite is true. The inference when you have a voluntary manslaughter instruction that includes that element and an involuntary manslaughter instruction that doesn't include it, it is not an element of the crime of involuntary manslaughter. But first of all, was there an objection to trial to this? To the instructions, no. And it appears that the reason there wasn't from the colloquy around the jury note was that the attorneys understood 8.55 as filling the hole. Because at one point when they were talking about the jury instruction, the defense lawyer, I believe, said, well, why don't you just direct them back to 8.55? And she said, well, maybe I'll do that later if they're still confused. So nobody seemed – they seemed to understand that this other instruction filled the hole. I think that that says a little too much. Of the instructions that were out there, that was going to be the closest. But 8.55 doesn't fill the hole. Why? 8.55 says that it suggested that some unlawful act must have caused the death. No, it says to constitute murder, there must be in addition to the death of a human being an unlawful act, which was the cause of that death. But it doesn't say it's the perpetrator's unlawful act. Yeah, but it's – Well, no. I think that's an important distinction when you have two different defendants, both of whom visited a battery on the victim and who were not being, as it turned out, found liable as aiders and abettors to one another. So if it was either one or the other, the answer is yes, some unlawful act did cause the death. But that is not – doesn't make up for the fact that to establish involuntary manslaughter, it has to be the defendant's unlawful act. What was the sentence in this case? The sentence in this case was, I believe, 11 years, 10 years, 11 years. At this point, Mr. Conwell is on parole. He's what? He's on parole. This case has lasted so long that I certainly do not believe that the case is moved by any means. But if there wasn't justice done, the worst weight of it has already been suffered. The light's telling me to sum up. I'm just going to point out what the evidence would have been if he had called the pathologist. The pathologist would have said that it was impossible to assign any cause of death in this case to a medical certainty, but that the most likely of the possible causes of death was a spontaneous heart attack brought on by causes essentially of the victim's own making, that it was extremely unlikely that the fracture to the thyroid horn brought about the victim's death, and that in any event, the fracture was as likely caused by the tick rained on by the co-defendant as it was by the crutch. I submit it is hard to conceive that the jury, having heard that evidence, would have found causation for underreasoned doubt, especially given how much trouble they had reaching a guilty verdict even with that evidence. I would like to conclude. Thank you. Good morning.  Gregory Oppler. Turning to taking these issues in order, the Court's response to the jury's question. The Supreme Court in Weeks said even in a capital case, it is not constitutional error to defer a jury back to its instructions. But that's exactly what didn't happen here, in fact. I mean, in other words, it is quite surprising because it seemed quite clear that the jury was concerned about this causation question, as well, perhaps, as the other one that was answered, and there was no answer given on the causation issue. And the suggestion was made that they simply refer back to the instruction, and the judge said, no, maybe I'll do that later if they're still confused. So she specifically did not do what Weeks said was okay. She specifically, no, she did not specifically refer them back to the same instruction, but she stated, and I think it's correct, that the jury's questions were premised on their mistaken belief that battery was an option. That was one. There were two questions, and one of them seems to have been that, and the other one couldn't have been clearer about what the juror in the second handwriting was asking, which is, do I need to convict him even if I don't think he caused the death? You don't think it says that? Do I need to convict him if it doesn't cause the death? Well, no, it did say that. Okay. And that's what wasn't answered. No, it wasn't, but eliminating battery from the equation, that instruction followed the question on battery. Right. Okay. It doesn't appear to me as a separate question, but in any event, the instructions covered that question. And my point is in referring to Weeks is that it is not necessarily possible to compare, not specifically answer. If I know there was a killing, this is the question in a separate handwriting. If I know there was a killing, but I don't believe the actions resulted in the killing for only one defendant. That's the question. And no, taking no, the judge's answer did not answer that question, but it stated that taking battery out of the equation would resolve or remove that issue. And while the instructions can be read to answer that question, they're at least confusing, because the actual involuntary manslaughter instruction does have a hole, and then there's this other kind of passive voice instruction later on, and you can see why they were confused. I beg your pardon. You can see why they were confused. Did you say there's a hole in the involuntary manslaughter one? Well, there's a hole in the involuntary manslaughter one, i.e. it doesn't have the causation in it, and then there's a much later instruction that somewhat cryptically does seem to have the causation in it. And so, you know, I'm not saying that the instructions themselves perhaps are invalid, but you can certainly see why people were confused. Do you agree, first of all, that there's a hole in the involuntary instruction? Only when you compare them side by side. Causation is a common law element of every crime. But jurors are supposed to follow their instructions, and we spend all our time comparing things side by side, i.e. we say that a statute, if it's missing something that's in another related statute, it's probably significant. So if the jury thought that, they were simply following ordinary sort of analytical principles. Your Honor, this claim rests entirely on the difference between the voluntary and involuntary manslaughter. The voluntary instruction, for some reason, delineates causation as an element. Many instructions do not specifically delineate that as an element. They put it in under another instruction, as here, that says... But we know for sure that at least one juror seems to have been confused by this. Yes. And that nobody answered his question and said, yes, there has to be causation. Correct. But we don't presume that that confusion remains. It's also true that the State Court of Appeals' decision made a mistake in that they read the conscious disregard piece of the involuntary manslaughter as filling the hole, where actually it's quite the opposite. Because the conscious disregard piece is supposed to be saying what isn't involuntary manslaughter, not what is. So they read the piece that says a killing in conscious disregard when a killing results from an intentional act, and they read the results and they're right about that. But this is saying, as the instruction was given, it's defining what isn't involuntary manslaughter, not what is involuntary manslaughter. I'm sorry. What claim are you talking about? Okay. The involuntary manslaughter instruction has in it, as given, a sentence that said, First it says that it's unlawfully killing a human being without an intent to kill him, without conscious disregard. And much of the definition that follows is then in the negative, i.e., it's saying what is conscious disregard so that you can know what's not conscious disregard. And in saying what is conscious disregard, it uses causation language, right? The Court of Appeals relied on that as saying that there was causation language. But, in fact, it has the opposite import. Your Honor, I have to confess. You're not understanding. No, I understand what you're saying. But I have to confess I'm not up on that issue, and I don't recall how it was, but I'll have to go back. Okay. Except that one juror didn't think so, at least. One juror didn't think so, but apparently the confusion was rectified. Otherwise, the juror would have asked again. Well, is that a fair thing to say? If a juror asks a question, gets an answer from a judge, you think she's going to go back and ask the same question again, which is already asked? I think it is fair. That's what the Supreme Court has said. The jurors, in weeks, the jurors asked a question which was covered by proper instructions. They, nevertheless, came to the court, trial court, and asked a question that was covered by those instructions. The trial court sent the juror back, referred to the instructions again. Okay, but that's exactly what didn't happen here, so I don't understand how you can rely on that. The point is, in weeks, the question, the answer to the question was in the instructions. If somebody had sent them back to this one sentence, maybe they would have thought that was the answer, but nobody did that. No, they didn't, but the instructions were before them. I mean, whether the court specifically says look at the instructions again, I think that's fairly clear. The jury had the instructions. They were readily asking questions. Are you going to address the ineffectiveness issue? I'd like to put something in perspective in talking about the prejudice. There's a lot of ado about causation in this case, but the chief defense here was self-defense, slash this was not an unlawful act, mutual combat. Conwell's conduct only had to be a substantial factor in contributing to Spate's death. By all accounts, including Conwell's, Spate went lifeless. Constance Johnson say Spate went lifeless after Conwell used his some 230 pounds across this man's neck. Conwell himself says Spate went lifeless during the beating by Washington. I thought part of the case was he might have even died by drowning in the creek. Wasn't that part of the state's case that he might have even drowned by died by drowning in the creek? It might have been thrown out as a theoretical possibility. But I mean, that's one of the possibilities. That was an argument to the jury. Was it argued to the jury? I don't recall whether it was argued to the jury, but it was it was made clear that that wasn't the root cause. Even Dr. Herman testified that there were various possibilities. There were many possibilities that could have could have contributed. But as to the root cause, the prosecution's argument was that both Conwell's and Washington's conduct. And when all of the evidence says that Spate went lifeless and didn't move again. In fact, Conwell thinks he's dead during the beating. There is no reasonable possibility that a jury is going to think. Or either Larry could say it's even more important to have this expert testimony on the other side, right? Well, it makes it even more crucial to have this other testimony. You could say that, but it would be also reasonable. You should say that. No, it would be reasonable to believe the contrary as well. I think what you're saying is reasonable. But I also believe it would be reasonable to believe that this wouldn't have affected them. Wasn't there some testimony, and I can't remember by whom, that there was actually that Washington went back and beat up on him more after Conwell did the thing with the crutch? I believe Conwell said that. At the trial? At the trial. I think it was at the trial. That's what I thought. Certainly. There was, I agree, somebody, and I think it was Conwell, said at some point that Washington beat him again after. So there was some evidence from which you could think that something happened after Conwell did the thing with the crutch that could have been the final straw, even with regard to Washington, as well as the possibility that it was a heart attack or something else. That's correct. But the jury did find specifically that Conwell used the crutch. But that wasn't in dispute whether he used the crutch. The question was what was the effect of using the crutch. Right. But the jury necessarily rejected Conwell's trial testimony. Well, some of it, but not all of it. I mean, they seem to have rejected as well most of the government's theory as to what happened, because they only found him guilty of involuntary manslaughter. Of course, part of the reason that that's true, part of the reason could be because there wasn't corroborated, right? And that doesn't, again, make the, you know, a conurbation expert more crucial. But you're apparently you're your argument is that failure to call, you know, a defense expert, even assuming it was, say, below standard was not prejudicial, right? It wouldn't have made a difference in the trial. Is that the burden of your comments on this on this issue? That's correct. Explain that to me a little more. I mean, you started to before we interrupted you, I think. My argument is that the prosecution had to show that Conwell's conduct, putting Washington aside, was a substantial factor contributing to the death of Space. And first of all, all of the, by all accounts, Space went lifeless during the beating. Now, I don't think it's reasonable that any jury would think that him going lifeless during the beating was what was caused by a wholly independent, wholly independent factor. I don't think the jury would have bought Mr. Anthony's. When you say wholly independent, I mean, you know, I think one of the causes that he says is a possibility is a heart attack. Right. Well, that could happen. You know, at the time that could have caused the victims go lifeless at that time. Right. He could have had a heart attack at that very instant when you say he went lifeless. Yes. So I mean, why is that impossible? Why is that not as reasonable a possibility as any other? The difference here is we have to separate what's the root cause and what is a cause. There were many possible. Well, OK. What is the root cause? Is that that bone in the in the larynx or whatever it is? Is that the root? What's the root cause? The root cause was, generally speaking, the beating. But isn't that exactly where the conflict was? First of all, between the two experts in the district court. Because Herman's overall analysis is it could have been the exact root track could have been various things, but it all had to trace back to these head and chest injuries and to the larynx fracture. And Anthony says exactly the opposite. He says these chest and head x-rays injuries were really pretty minor and were quite unlikely to have been the cause of the death. So there's just a complete disconnect between what the two of them are saying as the most likely thing that happened. Is that a fair analysis? Strictly speaking, yes. They both acknowledge, though, that there are various possibilities. Well, that's true. But one of them comes down and says in some way or another, it traced to the broken larynx and the chest problem. And the other guy says, almost surely not. That wasn't the cause of it. It could have been. It happens occasionally. But these were really minor injuries, very unlikely. Yes, they disagree as to the root underlying cause. Isn't that why isn't that exactly why you have to have some – and Anthony's a pretty fancy person. I mean, he's not somebody who's inherently unbelievable. Well, we know that he had reasonable medical certainty. It wasn't that standard being applied by one expert in a trial. Hopefully Anthony could have testified trial on reasonable medical certainty. But he didn't. He didn't testify. They did the hearing. And he was covered. That's the standards used in attorney liability in civil cases. Reasonable medical certainty. This question about the possibilities of this possibility, that possibility are merely possibilities. I'm sorry, Your Honor, I didn't. What I'm saying is the petitioner in this case was deprived of a expert witness testimony. I read in his counsel not calling for a person to testify or at least calling him, consulting with an expert to be better able to cross-examine Herman. Do you agree with that? That's the theory. That he thought he was better off cross-examining Herman instead of calling him. He thought he could do it on his own. Yes. But he didn't even consult with an expert to get some assistance in the cross-examination itself. But I think the investigation, the definition of investigation is something that varies case to case. An attorney certainly isn't required to consult an expert on every non-legal issue that arises. Would you wrap up in the next 30 seconds or so? I submit that the State Court's decision that there was no prejudice was well within the bounds of reasonable assistance. Great. Thank you very much. Mr. Hutchings, you have a little time, I think. Thank you, Your Honor. If I can brief. Taking the last point first. I think that the extent of the investigation is more of a reasonable tactical decision, but a reasonable tactical decision is weighed by what is gained and by what is lost. What do you counsel gain by not even calling a forensic pathologist? Absolutely nothing. What was lost? Well, I submit that there's a reasonable likelihood that that evidence could make all the difference. Do we? Is there a State Court opinion on the ineffectiveness issue? There's just a cross-party aisle. The prejudice argument, to the extent that I can follow what Mr. Ott was saying about prejudice, he seems, well, he says that even Kinewell's version is that the victim went limp while he was being beaten by Washington, but that pretty much contradicts that it was Kinewell's application of the crutch that necessarily killed him. It also does not preclude a spontaneous heart attack, which Dr. Anthony thought was the most likely scenario. What Mr. Ott seems to be saying was even if there was a spontaneous heart attack, one of the causes of that was the fight. But the evidence, Kinewell's evidence, which is the only evidence that the jury accepted was and the trial judge accepted was that the victim himself started the fight. And that the massive heart attack, if it occurred, was the result of his already very much enlarged heart, his massive cocaine abuse at that moment, and the exertions of a fight he himself started. If the jury accepted that, it would not find Mr. Kinewell. Oh, I apologize. Okay. Thank you, Mr. Hutchins. Thank you both for your arguments. The case of Kinewell v. Wilkford is submitted.
judges: Tashima, Berzon, Timlin